**CUSTOM COMPONENT SWITCHES, INC., a California corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21713.**

United States Court of Appeals Ninth Circuit.

June 4, 1968.

---

Mark Pastor (argued), Walter S. Weiss, Richard W. Craigo of Goodson & Hannam, Los Angeles, Cal., for appellant.

Ronald S. Morrow (argued), Asst. U. S. Atty., William M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Lee A. Jackson, William A. Fiedlander, Howard J. Feldman, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before BARNES, HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge:

In this tax refund suit, taxpayer, Custom Component Switches, Inc. (Company), appeals from a judgment for the United States. The issues presented in the district court and renewed here pertain to the imposition of penalties and interest for the asserted failure of the Company to file a timely federal income tax return for the fiscal year ending April 30, 1962.

On January 15, 1962, the Company filed a "United States Declaration of Estimated Tax for Corporations" for the taxable year ending April 30, 1962. In this declaration the Company estimated its total corporate income tax for that year to be $150,000, and stated its estimated tax due for the taxable year to be $50,000. At the time the declaration was filed, the Company paid $12,500 as its first installment. In due course the Company received a "Notice of Final Installment of Corporation Estimated Tax Due." On or about April 15, 1962, the Company paid $37,500 on the second installment of its estimated tax.

The Company's income tax return (Form 1120) for the fiscal year was due to be filed on or before July 15, 1962. However, on that date the Company filed Form 7004, "Application by a Corporation for Automatic Extension of Time to File U. S. Income Tax Return." In this form the Company stated its tentative tax for 1962 to be $98,000, and the unpaid balance of tax due as $48,000. The instructions set out on the reverse side of this form stated that the application for extension must be filed on or before the fifteenth day of the third month following the close of the taxable year "together with a remittance of an amount not less than would be required as the first installment should the taxpayer elect to pay the tax in installments as provided by law."

The Company's application for an automatic extension was filed without remittance of money. On or about August 17, 1962, the Internal Revenue Service mailed Form FL–95 to the Company, as it does as a matter of course in all cases where no remittance accompanies the application for automatic extension. The FL–95 letter notified the Company that the extension application would not be granted unless remittance was made of one-half of the balance due, or $24,000.

The president of the Company, and a substantial stockholder therein, is William E. Hannam. He is also a certified public accountant and a senior partner in a law firm specializing in tax matters, including those involving the Company. On August 28, 1962, following receipt of the FL–95 notice, Hannam telephoned the Los Angeles office of the Internal Revenue Service. He spoke with an employee in the Returns and Receipts Branch of the District Director of Internal Revenue. On the next day Hannam talked with Nathaniel Baron, who was in charge of the section of that office dealing with applications for extensions of time.

During that telephone conversation Baron called Hannam's attention to the provisions of the Internal Revenue Code and Treasury Regulations which, in Baron's opinion, required that a $24,000 remittance accompany the Company's application for automatic extension. Hannam told Baron that he would look up the matter and call Baron back. Baron told Hannam that if there was no answer within five days, the extension application would be denied. Hannam did not call back and the application for extension was denied by the Internal Revenue Service.

On October 15, 1962, the Company mailed its income tax return for 1962 and remitted the sum of $47,471.23, the balance of tax due as shown by the tax return. The return was received by the Internal Revenue Service October 16, 1962. On November 9, 1962, the Internal Revenue Service assessed an addition to tax against the Company in the amount of $9,494.25, plus interest of $719.87, or a total of $10,214.12, for the Company's failure to timely file its return for the taxable year. The addition to tax was computed on the basis that the Company's return was delinquent for a period of three months and one day. The Company paid the additional tax plus interest and filed a claim for refund.

No action was taken with respect to this claim and the Company therefore commenced this tax refund suit in the district court. The district court, after a trial, entered findings of fact, conclusions of law and a judgment for defendant. This appeal followed.

The penalties constituting the bulk of the questioned addition to tax were imposed pursuant to section 6651 of the Internal Revenue Code of 1954 (Code), 26 U.S.C. § 6651 (1964). According to that statute, if the Company failed to file its 1962 income tax return on the date prescribed therefor, determined with regard to any extension of time for filing, the penalties prescribed therein must be added "unless it is shown that such failure is due to reasonable cause and not due to willful neglect \* \* \*." The Company argues that it made a timely filing of its 1962 return within the meaning of section 6651 and that, if the Company's filing was not timely, such failure was due to reasonable cause and not due to willful neglect. If the Company is correct as to either of these contentions no addition to tax should have been assessed.

The Company's tax return for the 1962 fiscal year was ordinarily due on or before July 15, 1962. It was not filed until October 16, 1962. The Company therefore failed to file the return on the date required unless it obtained an extension of time for such filing. Provision for obtaining such an extension is made in section 6081(b) of the Code, 26 U.S.C. § 6081(b) (1964) which reads:

"(b) Automatic Extension for Corporation Income Tax Returns.—An extension of 3 months for the filing of the return of income taxes imposed by subtitle A shall be allowed any corporation if, in such manner and at such time as the Secretary or his delegate may by regulations prescribe, there is filed on behalf of such corporation the form prescribed by the Secretary or his delegate, and if such corporation pays, on or before the date prescribed for payment of the tax, the amount properly estimated as its tax or the first installment thereof required under section 6152; but this extension may be terminated at any time by the Secretary or his delegate by mailing to the taxpayer notice of such termination at least 10 days prior to the date for termination fixed in such notice."

The form referred to in this statute, and the manner and time of filing it, are provided for in Treasury Regulation (Reg.) § 1.6081–3, 26 C.F.R. § 1.6081–3. Under this regulation a corporation desiring an automatic extension of time for filing its income tax return shall file an application therefor on Form 7004, "Application for Automatic Extension of Time to File U. S. Corporation Income Tax Return," on or before the date prescribed for the filing of the return. As indicated earlier in this opinion, the Company fully complied with this provision of Reg. § 1.6081–3, filing its Form 7004 on July 15, 1962.

But, as section 6081(b) of the Code further provides, in order to obtain an automatic extension a corporation must, in addition to filing such a form, pay "on or before the date prescribed for payment of the tax, the amount properly estimated as its tax or the first installment thereof required under section 6152 \* \* \*."

The Company did not, on or before July 15, 1962, pay the amount properly estimated as its tax. The amount properly estimated as its 1962 tax was $98,000, and only $50,000 of that sum had been paid by July 15, 1962. The question remains whether, within the meaning of section 6081(b), the Company, on or before July 15, 1962, paid "the first installment thereof required under section 6152 \* \* \*." If it did, then, under section 6081(b), it was entitled to the automatic extension.

The Company asserts that it did, reasoning in part as follows: (1) the plain wording of section 6081(b) requires any corporate taxpayer filing for an automatic extension under section 6081(b) to pay only the first installment (one-half) of the "amount properly estimated as its tax," payment to be made at any time "on or before" the due date of its return; (2) this the Company did, since it paid a total of $50,000 (in excess of one-half of its ultimate tax liability) "on or before" July 15, 1962, the original date of its return; (3) however, such a literal interpretation of section 6081(b) would

conflict with a likewise literal interpretation of section 6152 of the Code, 26 U.S.C. § 6152 (1964), which provides for the filing of a tax return and the payment of the first installment (one-half) of the "unpaid amount" of taxes, such payment to occur "on the date" prescribed for payment of the tax; (4) the conflict between the literal interpretations of the two statutes is such that in some cases, if so interpreted, it would be more advantageous for a taxpayer to file for an automatic extension rather than to file a return with the election to pay in installments.

Having thus concluded that, read literally, there is an inconsistency or incongruity between sections 6081(b) and 6152, the Company proposes an interpretation of the two statutes which renders them compatible and under which interpretation it would necessarily be concluded that the Company had complied with the payment provision of section 6081(b).

The Company's proposed interpretation is predicated on the following propositions: (1) sections 6081(b) and 6152 should be interpreted in light of the clear congressional policy which provides a different treatment for corporate taxpayers with ultimate tax liabilities over $100,000 than for corporate taxpayers with ultimate tax liabilities under $100,000; (2) section 6016 of the Code, 26 U.S.C. § 6016 (1964) contemplates that corporate taxpayers with tax liability over $100,000 must make prepayments on their income tax; (3) therefore, when such taxpayers file for either an automatic extension under section 6081(b) or elect to pay their tax installments under section 6152, both sections should be construed as requiring payment of one-half of the unpaid balance of income taxes on such due date; (4) conversely, section 6016 does not contemplate that corporate taxpayers (such as the Company) with ultimate tax liability under $100,000 will be required to make any prepayments on their income tax; (5) therefore, when such taxpayers (including the Company) file for either an auto-

matic extension under section 6081(b) or elect to pay their tax in installments under section 6152, both sections should be construed as requiring, on or before the due date for the filing of the corporate tax return, a payment of an amount equal to one-half of their ultimate tax liability. As before indicated, the Company did this.

The key premise in this entire line of argument, whereby sections 6081(b) and 6152 would be given different constructions depending upon whether the corporation has an ultimate tax liability of more or less than $100,000, is the very first premise, namely:

"[T]he plain wording of section 6081 (b) would require any corporate taxpayer filing for an automatic extension under section 6081(b) to pay only the first installment (½) of the 'amount properly estimated as its tax' at any time 'on or before' the due date of its return."

In our opinion this is a faulty premise. The "plain wording" of section 6081(b) does not require such a taxpayer to pay only the first installment (one-half) of the amount properly estimated as its tax. Instead, it requires such a taxpayer to pay the amount properly estimated as its tax "or the first installment thereof *required under section 6152* * * *." (Emphasis supplied.)

The Company's "literal" construction of section 6081(b) ignores the word "required under section 6152." If, as section 6081(b) expressly provides, the provisions of section 6152 are to be applied in determining what the "first installment thereof" is to be, it will be seen that the installment is to be one-half of "the unpaid amount of such taxes * * *." On July, 15, 1962, the unpaid amount of the Company's 1962 income tax was $48,000, and one-half thereof was $24,000. The Company made no part of that payment on or about July 15, 1962.

The Company has also advanced a number of ancillary arguments in support of its position but we consider them

insufficient to warrant disregard of what we consider to be the express requirements of sections 6081(b) and 6152. We therefore conclude that, since the Company failed to pay, on or about July 15, 1962, the $24,000 representing one-half of its then unpaid 1962 taxes, it was not entitled to an automatic extension of time for filing its 1962 tax return. It follows that the Company's 1962 income tax return was not timely filed and that it was subject to penalties under section 6651, unless it was shown, as provided in that statute, "that such failure is due to reasonable cause and not due to willful neglect * * *."

■ Having in mind all of the evidence bearing upon the latter question, the salient features of which are summarized at the outset of this opinion, we conclude that the district court finding that the Company failed to show that there was reasonable cause for the failure to make timely filing of the 1962 return, and that such failure was not due to willful neglect, is not clearly erroneous.

■ The assessment of the prescribed penalties for the months of July 15–August 15, August 15–September 15, and September 15–October 15, 1962, was therefore proper. In our opinion, however, since the tax return was actually mailed on October 15, and since the statute, as thereafter amended, provides that the mailing date shall be regarded as the filing date,[1] the one-day delay in filing the return on October 16, instead of October 15, 1962, should have been disregarded as de minimis, and therefore a one month's penalty (five percent of the amount of the tax, or $2,373.56) should not have been assessed.

The cause is remanded for a recomputation of the judgment to eliminate the penalty and associated interest, if any, attributable to the October 16, instead of October 15, filing. In all other respects the judgment is affirmed.

---

[1] Act of Nov. 2, 1966, Pub.L. No. 89–713, § 5(a), 80 Stat. 1110, amending 26 U.S.C. § 7502 (1964) (codified at 26 U.S.C. § 7502 (Supp. II, 1965–66)).